## CONWAY v. FIRST NAT. BANK OF ROME, GA.

(Circuit Court of Appeals, Fifth Circuit. March 1, 1919.)

### No. 3329.

1. BANKS AND BANKING ⊙⇒246—NATIONAL BANKS—RENEWING CHARTER—WITHDRAWAL OF STOCKHOLDER—NOTICE.

Under Act July 12, 1882, § 5, providing that a stockholder, not assenting to amendment of articles of a national banking association, extending its existence, may give notice to directors of desire to withdraw, whereupon he shall be entitled to receive the value of his shares, ascertained by appraisers selected by him and the directors, notice to the president, unless shown to have been communicated to the directors, is insufficient.

2. BANKS AND BANKING ⊙⇒246—NATIONAL BANKS—RENEWING CHARTER—WITHDRAWAL OF STOCKHOLDER—NOTICE.

Resolution of directors of national bank, authorizing president to apply to Comptroller of Currency for approval of amendment of its charter extending its existence, did not authorize him to receive or waive notice for them, under Act July 12, 1882, § 5, from a nonassenting stockholder, of desire to withdraw.

3. BANKS AND BANKING ⊙⇒246—NATIONAL BANKS—RENEWING CHARTER—WITHDRAWAL OF STOCKHOLDER—NOTICE.

Under Act July 2, 1882, § 5, as to notice of desire to withdraw, which a stockholder, not assenting to amendment of articles of national banking association extending existence, is authorized to give "within 30 days from date of the certificate of approval," notice can be given only when and after the amendment has been approved by the Comptroller.

4. BANKS AND BANKING ⊙⇒246—NATIONAL BANKS—RENEWING CHARTER—WITHDRAWAL OF STOCKHOLDER—NOTICE.

That letter of stockholder, in answer to request of president for consent to disposition of certain assets, preparatory to examination by Comptroller, as preliminary to renewal of charter, stating that he had bought his stock with intention to liquidate it, and was not in position to carry it permanently, was not intended as the formal notice of desire to withdraw, required by Act July 12, 1882, § 5, to be given by stockholder not assenting to extension of existence of national banking association, is apparent from the language used.

5. BANKS AND BANKING ⊙⇒246—NATIONAL BANKS—RENEWING CHARTER—WITHDRAWAL OF STOCKHOLDER—NOTICE.

That letter by stockholder to president of national banking association, relative to disposition of certain assets preliminary to extension of existence, was not intended to be treated, even by the stockholder, as a substitute for the formal notice of desire to withdraw, required by Act July 12, 1882, § 5, is apparent from subsequent efforts of stockholder to ascertain when the notice must be given, and his actual attempt to give it.

---

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. BANKS AND BANKING ☜246—NATIONAL BANKS—RENEWING CHARTER—
WITHDRAWAL OF STOCKHOLDER—NOTICE—USE OF MAILS.
    Notice of desire to withdraw, which Act July 2, 1882, § 5, required a
nonassenting stockholder of a national banking association to give within
30 days from the date of the Comptroller's certificate of approval of
amendment of its articles extending its existence, is too late, though mail-
ed within that time, not having reached destination till after expiration
thereof; the post office becoming the stockholder's agent exclusively, his
use of the mails being his selection.

7. BANKS AND BANKING ☜246—NATIONAL BANKS—RENEWING CHARTER—
WITHDRAWAL OF STOCKHOLDER—NOTICE—ADDRESSEE.
    Notice of desire to withdraw, which Act July 2, 1882, § 5, provides
that a nonassenting stockholder shall give the directors of a national
banking association extending its existence by amendment of its articles,
is improperly addressed to the bank.

8. BANKS AND BANKING ☜246—NATIONAL BANKS—RENEWING CHARTER—
WITHDRAWAL OF STOCKHOLDER—NOTICE—ESTOPPEL.
    Want of authority of president of national banking association to
represent it in respect to notice of desire to withdraw, which stockholder
not assenting to renewal of its charter must, under Act July 12, 1882, §
5, give to the directors, prevents the bank being estopped to deny suffi-
ciency of a notice too late under the statute, but within the time that the
president is claimed to have told the stockholder's representative that it
could be given, especially where this was in a casual conversation, and
the president did not assume to act for the bank, and had no reason to
believe he was talking to a representative of the stockholder.

9. BANKS AND BANKING ☜246—NATIONAL BANKS—RENEWING CHARTER—
WITHDRAWAL OF MEMBER—NOTICE—INFORMATION AS TO TIME.
    The directors of a national banking association, to whom, within 30
days after approval by Comptroller of Currency of amendment of its
articles extending its existence, a nonassenting stockholder must give
notice of desire to withdraw, entitling him to receive from the bank the
appraised value of his shares, are under no duty to give information of the
approval, in the absence of request.

Appeal from the District Court of the United States for the North-
ern District of Georgia; Beverly D. Evans, Judge.

Suit by J. W. Conway against the First National Bank of Rome,
Georgia. Bill dismissed, and plaintiff appeals. Affirmed.

Robert C. & Philip H. Alston, of Atlanta, Ga., for appellant.

G. E. Maddox, of Rome, Ga., for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, Dis-
trict Judge.

GRUBB, District Judge. The appellant, a citizen of North Caro-
lina, filed his bill in equity in the District Court of the United States
for the Northern District of Georgia against the appellee, which was
a national banking corporation, doing business at Rome, Ga. The pur-
pose of the bill was to enforce against the defendant bank the right
given a stockholder in a national bank, upon the amendment of the
charter of the bank, to withdraw from membership and compel the
bank to liquidate his shares at an appraised value, provided he gives
notice of his intention to withdraw within 30 days from the date of
the approval of the amendment to the bank's charter by the Comp-
troller of the Currency.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests &,Indexes

The charter of the defendant bank expired by operation of law August 14, 1917. On June 6, 1917, the directors of the defendant bank passed a resolution providing that an amendment to the charter should be applied for, extending it for an additional period of 20 years, and the president or cashier was authorized to apply to the Comptroller of the Currency to have the amendment approved. Upon application to the Comptroller, the law requires the Comptroller to cause a special examination of the bank to be made to determine its condition, and if, after such examination, it appears to him that the bank is in a satisfactory condition, he shall grant the certificate of approval of the amendment extending the charter; otherwise, withhold it. After the resolution of the directors was adopted, and on June 30, 1917, a circular letter was addressed to each of the stockholders, including the appellant, who had then recently purchased 122 shares of the bank's stock, calling attention to the necessity for renewing the bank charter, and for the disposition of certain assets before doing so, and suggesting the declaration of a dividend payable in these undesirable assets. A copy of the circular letter was sent appellant, and, failing to respond to it promptly, the president of the bank wrote him a personal letter on July 7th, asking him for the return of the circular letter with signature, evidencing his consent to the proposed disposition of assets by way of dividend, in preparation of the examination of the bank by the Comptroller, known to be a preliminary to the renewal of its charter. Replying to this letter, the appellant wrote a letter, addressed to Mr. Reynolds, who was the bank's president, personally, in which he acknowledged receipt of the letter of inquiry, and stated that he had bought the stock having in mind to liquidate it, as he had understood from the seller that he would have that privilege, and that he was not in shape to carry the stock as a permanent investment. In reply, Mr. Reynolds wrote appellant that he was sorry to receive his letter of July 10th, as he had hoped to have the pleasure of working with him in years to come. Here the correspondence ceased until September 12, 1917.

In the meantime, application for the renewal of the bank's charter was filed, pursuant to the resolution of its board of directors, and a certificate of renewal was approved by the Comptroller of the Currency on August 14, 1917, which was the date of expiration of the old charter. The certificate of renewal, at the suggestion of the Comptroller, but not as a legal requirement, was published in a local newspaper at Rome for a period of 30 days. On September 14th the officers of the defendant bank received a letter addressed to "First Nat'l Bank, Rome, Ga.," signed by the appellant, giving the bank notice of his desire to withdraw from the bank his 122 shares of stock, and, upon appraisal of their value, to be paid by the bank the amount thereof. The letter also inquired as to the date of expiration of the bank's charter, and whether application had been made for its renewal to the Comptroller. The letter was dated September 12th, and mailed in Atlanta September 13th, but not delivered to the defendant bank at Rome until September 14th. To this letter, Mr. Reynolds, the bank's president, for it, replied, acknowledging receipt of the notice, and ad-

vising that the time for notice of withdrawal had expired September 13th, and that the charter had been renewed on August 14th. This was treated by appellant as a refusal to permit withdrawal, and he thereupon filed this suit.

Some time in July, 1917, the appellant contended that the president of the defendant bank had stated to one Goodrum, a stockbroker, who bought the stock for him, and who, as appellant contended, still remained his agent to effect its withdrawal, that the time for giving notice of withdrawal was September 15th; that this statement was communicated by Goodrum to appellant, who acted upon it in refraining to give notice until after September 13th, and that the bank was estopped by its president's statement from claiming that the notice was not timely. Reynolds denied giving Goodrum any misinformation as to the date of expiration, and denied that he knew that Goodrum had any connection with appellant with reference to the stock, on the occasion of the conversation between Goodrum and himself in which Goodrum testified the wrong information was given him by Reynolds. The District Judge, after hearing the evidence, dismissed the bill upon the merits, and from this decree the appeal is taken.

[1, 2] The appellant complains of three adverse findings of the District Judge: First, that the correspondence that passed between the appellant and Reynolds in July did not amount to a substantial compliance with the Act of Congress as to notice; second, that the notice sent to the bank, after the charter was renewed, was not given within 30 days of the date of the certificate of approval, as required by the statute; third, that the acts and conduct of the president, Reynolds, relied upon as an estoppel against the bank, did not constitute an estoppel against the bank. We think the District Judge correctly ruled in all three of the findings.

First. The pertinent part of section 5 of the Act of July 12, 1882, chapter 290 (22 Stat. 162), the act which authorizes the renewal of the charters of national banks and the withdrawal of nonassenting stockholders, reads as follows:

"When any national banking association has amended its articles of association as provided in this act, and the Comptroller has granted his certificate of approval, any shareholder not assenting to such amendment may give notice in writing *to the directors*, within thirty days *from the date of the certificate of approval* of his desire to withdraw from said association."

Section 5 then provides that he shall·be entitled to receive from the association the value of the shares held by him, to be ascertained by an appraisal made by a committee of three persons, one to be selected by the shareholder, one by *the directors,* and the third by the first two. It provides, further, for an appeal to the Comptroller by the shareholder, but not by the bank, and that the shares appraised and surrendered by the withdrawing stockholder shall, after due notice, be sold by the bank at public sale within 30 days after the final appraisal.

The correspondence between the appellant and Reynolds, the president of the bank, that occurred in July, was insufficient to constitute a statutory notice of withdrawal by appellant, because: (1) It was

not a notice to the directors of the bank, nor shown to have been communicated to them; (2) it happened before the amendment was applied for, and before the certificate of approval was signed by the Comptroller; (3) it was not understood by the parties to it to have been intended as a notice of withdrawal.

(1) The act provides for written notice to the directors. It provides that the directors shall select one appraiser. This is enough to show that notice to the president, unless shown to have been communicated to the directors, is insufficient. No such showing is made in the record. The resolution of June 6th authorized the president or cashier, merely following the language of the act, "to apply to the Comptroller of the Currency to have this amendment approved." It did not authorize the president to do anything else, and therefore did not authorize him to either receive or waive notice for them. The important duty of selecting the appraiser is vested in the directors, and not in the president. It is a duty which the directors could not delegate to the president. It is a duty which the directors could exercise only after personal receipt of the notice of withdrawal. We conclude that the directors were the only officers of the bank who could receive the statutory notice, and that the president could neither receive nor waive it for them.

[3] (2) The statute provides for the notice of withdrawal to be given "within thirty days from the date of the certificate of approval." A reading of section 5 clearly indicates that the notice can only be given when and after the amendment has been approved by the Comptroller. If the amendment is not approved, there can be no withdrawal, and until it is approved there is no reason for the giving of the notice. The president being without authority to waive the statutory notice for the directors, it is unnecessary to consider whether his reply of July 11th to appellant's letter of July 10th could be considered as waiving it.

[4, 5] (3) However, it seems clear that the July correspondence was not treated by either party to it as either the formal statutory notice or as a waiver of the giving of it. That it was not intended as the statutory notice is apparent from the language used; that it was not intended to be treated as a substitute for it, even by the appellant, is apparent from the subsequent efforts of appellant to determine when the statutory notice must be given, and the actual attempt made by him in September to give it.

The appellant acquired no standing, predicated on the July correspondence.

[6, 7] Second. The District Judge was also right in his conclusion that the notice of September 13th, received by the bank September 14th, was not within the permitted 30 days. The July correspondence related to the consent of the appellant to a plan for the disposition of undesirable assets before application was made by the bank for a renewal of its charter. The proposition was declined by appellant, and that transaction came to an end in July. The use of the mails in September by the appellant, to convey the statutory notice to the bank, was by appellant's selection, and the post office, therefore, became his

agent exclusively, and the notice was not brought home to the bank till it actually received the letter in Rome. Haldane v. United States, 69 Fed. 819, 823, 16 C. C. A. 447, and cases cited. The notice of September 13th was also insufficient, in that it was not addressed to the directors, but to the bank. Presumably it would have reached the executive officers of the bank only, and it was incumbent on the appellant to show that it reached or was communicated to the directors within the 30 days, to show a compliance with the statute. No showing to that effect is made.

[8] Third. The District Judge also correctly ruled that the alleged statement made by Reynolds, the president of the bank, in July, to Goodrum, did not estop the bank from afterwards disputing the sufficiency of a notice, made within the time alleged to have been stated by Reynolds to be sufficient, but not in fact sufficient. The power to act being vested by the statute exclusively in the directors, in matters of such withdrawals, the president was without authority to commit the bank by any statement relative to notice of withdrawals. Want of such authority to represent the bank would prevent an estoppel. The resolution of June 6th did not purport to confer on the president any authority, except to apply to the Comptroller for the certificate of approval. It would not be competent for the directors to vest the president with authority to waive the statutory requirement of notice, in advance, and no estoppel could be predicated on his mere failure to convey correct information in a casual conversation.

Nor does it appear from the evidence of Goodrum that Reynolds assumed to act for the bank in reference to the conversation between them. Goodrum's evidence also shows that, whatever the real fact may have been, and it does not seem to have been to the contrary, Reynolds had no reason to believe, at the time of the conversation, that he was talking to an agent of the appellant, or that the information given was intended to be communicated to appellant by Goodrum when it was disclosed by Reynolds. Reynolds, therefore, had no reason to believe it was to be relied upon or acted upon by appellant, when he made the statement, and, for that reason, Reynolds himself would not be estopped to thereafter dispute it—much less, the defendant bank. The District Judge may also well have found from the evidence that no erroneous statement was made by Reynolds to Goodrum.

The appellant contends that the order upon the motion to dismiss the bill of complaint as amended fixes the law of the case, except as to the sufficiency of a notice mailed on the thirtieth day but not reaching the bank till the thirty-first day, in favor of the appellant. The amended bill asserts the full authority of Reynolds, as president of the bank, to act for the bank in all matters affecting the renewal of the charter, which would include the withdrawal of nonassenting stockholders. The decree dismissing the bill on the merits, in other respects than the sufficiency of the notice of September 13th, was based upon the failure of the proof to establish such authority, and to satisfy the court of the acts and conduct of the president relied upon by the appellant to constitute an estoppel.

[9] The appellant also contends that it was the duty of the directors of the defendant bank to give its stockholders notice of the approval of the amendment by the Comptroller, and that this duty arises from the fiduciary relation between the directors and the stockholders. The statute provides for no such notice, and this seems to be a sufficient reason for holding it unnecessary. While the directors are trustees for the stockholders in many ways, it does not follow that they represent the nonassenting stockholders in the matter of the amendment of the bank's charter. In this case the bank, as a corporate entity, had decided to renew its charter by corporate action. It was the duty of the directors, made so by the statute, to handle this matter for the bank. If a stockholder desired to withdraw from the bank, it was his statutory right so to do. The exercise of the right was, however, against the interest of the bank and the two-thirds assenting owners of the bank's shares. The bank was required to buy the nonassenting shareholder's stock at its appraised book value, and sell it, within 30 days of the final appraisement, at what it would bring. The record shows that the market value of the shares of the defendant bank was less than their book value. The bank and its assenting shareholders were forced, by the terms of the statute, to lose the difference. In view of this situation, while the directors would owe nonassenting stockholders the duty of disclosing to them fairly, on request, any information necessary to enable them to properly exercise their right, we do not think they would owe a nonassenting stockholder the affirmative duty to supply him with information, unsolicited by him, which would assist him, to the disadvantage of the bank of which they were directors and trustees. The bank could be represented by the directors only; the nonassenting stockholder could look out for himself. The necessary information could have been acquired by him by inquiry from the bank or from the Comptroller. We do not think, in the absence of a statutory requirement, it was the duty of the directors to supply it, in the absence of a request.

The decree appealed from is affirmed, with costs.

Affirmed.